UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| P.H.,<br><br>        Plaintiff,<br><br>    v.<br><br>ANDREW M SAUL,<br><br>        Defendant. | Case No. 19-cv-04800-VKD<br><br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 16, 19 |

Plaintiff P.H.[1] appeals a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381, *et seq*. P.H. claims that the administrative law judge ("ALJ") erred in evaluating certain medical opinions, which in turn led to a flawed assessment of P.H.'s residual functional capacity ("RFC").

The parties have filed cross-motions for summary judgment. The matter was submitted without oral argument. Upon consideration of the moving and responding papers and the relevant evidence of record, for the reasons set forth below, the Court grants in part and denies in part P.H.'s motion for summary judgment, grants in part and denies in part the Commissioner's cross-motion for summary judgment, and remands this matter for further administrative proceedings

---

[1] Because opinions by the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by her initials. This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

consistent with this opinion.[2]

## I.  BACKGROUND

By the time of the September 2018 administrative hearing, P.H. was 57 years old.  She has a high school education and worked as a respiratory therapist from 1989 to 2009 and as a food service worker from 2014 to 2016.  AR[3] 263, 271, 306.

P.H. filed an SSI application on July 10, 2017 and a DIB application on July 11, 2017,[4] alleging that she has been disabled since November 1, 2016[5] due to depression, anxiety, post-traumatic stress disorder ("PTSD"), hypertension, back injury, sciatica and diabetes.  AR 263, 271, 285, 305.  Her application was denied initially and on review.  An ALJ held a hearing in September 2018 and subsequently issued an unfavorable decision on January 28, 2019.  AR 19-31.

The ALJ found that P.H. meets the insured status requirements of the Act through December 31, 2021 and that she has not engaged in substantial gainful activity since November 1, 2016.  He further found that P.H. has the following severe impairments:  major depressive disorder, essential hypertension, chronic female pelvic pain, and PTSD.  AR 22.  However, the ALJ concluded that P.H. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Commissioner's regulations.  AR 23-25.  The ALJ determined that P.H. has the RFC to perform medium work, as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c), with the following limitations:

> [P.H.] can perform simple, routine, repetitive tasks involving no more than simple work-related decisions and occasional workplace changes; occasional interaction with the public and frequent interaction with co-workers that does not involve working on teams; can perform work limited to no fast-paced production requirements,

---

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 8, 9.

[3] "AR" refers to the certified administrative record lodged with the Court.  Dkt. No. 15.

[4] P.H.'s DIB application has a protective filing date of February 6, 2017.  AR 174.

[5] P.H.'s applications initially alleged an onset of disability beginning January 1, 2010.  AR 263, 271.  She subsequently amended her applications to state an alleged onset date of November 1, 2016.  AR 285.

>which is defined as constant activity with tasks performed sequentially and in rapid succession; and with respect to concentration, persistence and pace, will be off-task less than ten percent of the time in an eight-hour workday.

AR 25. The ALJ found that although P.H. is unable to perform any past relevant work, she is capable of making a successful adjustment to other jobs that exist in significant numbers in the national economy, such as hospital cleaner, laundry worker and janitor. AR 29-31. Accordingly, the ALJ concluded that P.H. was not disabled, as defined by the Act, from November 1, 2016 through the date of his decision. AR 31.

The Appeals Council denied P.H.'s request for review of the ALJ's decision. AR 1-3. P.H. then filed the present action seeking judicial review of the decision denying her application for benefits.

## II.   LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Ahearn v. Saul*, — F.3d —, No. 19-35774, 2021 WL 609825, at *2 (9th Cir. Feb. 17, 2021); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance" and is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ahearn*, 2021 WL 609825 at *2 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)); *see also Morgan*, 169 F.3d at 599 (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Ahearn*, 2021 WL 609825 at *2; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Ahearn*, 2021 WL 609825 at *2; *Morgan*, 169 F.3d at 599.

## III.   DISCUSSION

P.H. argues that the ALJ erred in two main, and related, respects. First, she contends that the ALJ did not properly assess certain medical opinions. Specifically, she says that the ALJ erred

by failing to assign any weight to the opinion of Marike Seeman, LCSW, and by giving "partial weight" to the opinions of psychologist Aparna Dixit, Psy.D and physician Farah Rana, M.D. Second, P.H. argues that the ALJ's alleged errors in assessing the medical opinions led to a flawed assessment of her mental and physical RFC. As discussed below, the Commissioner concedes that remand is required because the ALJ erred by failing to discuss how he evaluated Ms. Seeman's opinion and to account for her opinion in his RFC assessment. Nevertheless, the Commissioner maintains that the ALJ properly evaluated the opinions of Drs. Dixit and Rana. The parties also dispute whether this matter should be remanded for further administrative proceedings or for payment of benefits under the credit-as-true doctrine.

### A.  Medical Opinions
#### 1.  Legal Standards

Preliminarily, the Court observes that although the parties appear to agree that P.H.'s DIB and SSI applications were filed in July 2017 (*see* Dkt. No. 17 ¶¶ 1, 2; Dkt. No. 20 ¶¶ 1, 2), i.e., after new Social Security Administration regulations regarding the evaluation of medical opinions went into effect on March 27, 2017, both sides continue to base their arguments on the so-called "treating physician rule." No one says whether the February 6, 2017 protective filing date for P.H.'s DIB application (AR 174) affects the analysis as to which set of regulations applies. For the reasons discussed below, the Court concludes that under either set of regulations, the ALJ properly evaluated Dr. Dixit's opinion, but erred in his assessment of Dr. Rana's opinion.

##### a.  Treating Physician Rule

For Social Security applications filed before March 27, 2017, under the "treating physician rule," "[t]he medical opinion of a claimant's treating doctor is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also* 20 C.F.R. § 416.927(c)(2) (same). "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency

4

with the record." *Revels*, 874 F.3d at 654 (citing § 404.1527(c)(2)-(6)); *see also* 20 C.F.R. § 416.927(c)(2)-(6) (same). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Revels*, 874 F.3d at 654 (internal quotations and citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (internal quotations and citation omitted).

### b. 2017 Regulations

For benefits applications filed after March 27, 2017, the Social Security Administration's regulations and several Social Security Rulings regarding the evaluation of medical evidence have been amended, including SSR 96-2p ("Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions"). "The new regulations provide that the Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion.'" *V.W. v. Comm'r of Soc. Sec.*, No. 18-cv-07297-JCS, 2020 WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. § 416.920c(a)); *see also* 20 C.F.R. § 404.1520c(a); *Jones v. Saul*, No. 2:19-cv-01273 AC, 2021 WL 620475, at *6 (E.D. Cal. Feb. 17, 2021) (noting that the 2017 regulations eliminate the deference given to treating physicians for claims filed after March 27, 2017); *Ward v. Berryhill*, No. 7-CV-2371-W(WVG), 2019 WL 142203, at *11 n.4 (S.D. Cal. Jan. 9, 2019) (noting that "[i]n accordance with Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 11 (Jan. 18, 2017), the treating physician rule, as described herein, will no longer be in effect for applications made to the SSA on or after March 27, 2017.").

Instead, the Commissioner will evaluate the persuasiveness of all medical opinions based on (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. 20 C.F.R. § 404.1520c(a), (c)(1)-(5), § 416.920c(a), (c)(1)-(5). "The two 'most important factors for determining the persuasiveness of medical opinions are

consistency and supportability,' which are the 'same factors' that 'form the foundation of the current treating source rule.'" *V.W.*, 2020 WL 1505716 at *13 (quoting Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853). When evaluating medical opinions, the Commissioner "may, but [is] not required to," explain how the Social Security Administration considered the remaining factors listed in paragraphs (c)(3) through (c)(5) of the regulations, as appropriate. 20 C.F.R. § 404.1520c(b)(2), § 416.920c(b)(2).

"Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions." *V.W.*, 2020 WL 1505716 at *14 (citation omitted). "Further, the ALJ is required to specifically address the two most important factors, supportability and consistency." *Id*. (citing 20 C.F.R. § 416.920c(b)); *see also* 20 C.F.R. § 404.1520c(b).

### 2. Marike Seeman, LCSW

Marike Seeman is a licensed clinical social worker who has provided P.H. with counseling since August 15, 2017. AR 706-707, 1220, 1266. Ms. Seeman completed two mental health questionnaires. In the November 1, 2017 questionnaire, she diagnosed P.H. with PTSD, noting that the diagnosis "follows a domestic violence event" and that P.H. "can become very irritable and tends to isolate." AR 1220. Ms. Seeman further assessed P.H. with moderate impairment in her ability to concentrate and poor ability to understand, remember and carry out complex instructions; perform activities within a schedule and maintain regular attendance; and complete a normal workday and workweek without interruptions from psychologically based symptoms. AR 1221-1223. In a March 12, 2018 mental health questionnaire, Ms. Seeman found overall mild limitations in P.H.'s ability to interact with others, as well as several moderate to marked limitations in P.H.'s abilities to understand, remember and apply information; concentrate, persist, or maintain pace; and adapt or manage herself. AR 1268-1269. Ms. Seeman further noted that P.H. "has been doing significantly better" with therapy, but continues to struggle with some anxiety symptoms and would likely miss 4 days or more of work per month and be off-task 25% of an 8-hour day. AR 1269.

Although the ALJ summarized Ms. Seeman's findings (AR 27), the Commissioner concedes that remand is required because the ALJ did not identify or explain the importance he gave to her opinion and failed to account for her opinion in formulating P.H.'s RFC. Nevertheless, the Commissioner maintains that the ALJ properly evaluated the other two medical opinions at issue.

### 3. Dr. Aparna Dixit, Psy.D

Psychologist Dr. Dixit conducted a mental status examination of P.H. on April 13, 2018. AR 1249-1257. She observed that P.H. had a mildly disheveled appearance, cooperative attitude, spontaneous and clear speech, fair insight and judgment, dysthymic mood, full range of affect commensurate with mood, and no evidence of a formal thought disorder or anxiety. AR 1254-1255. Dr. Dixit noted symptoms of a "mild mood dysfunction," with a need to rule out substance induced mood disorder, but found no significant cognitive defects upon testing and stated that P.H.'s "mood disorder appears closely related to her use and abstinence from addictive substances, which appears to be volitional." AR 1256. Dr. Dixit further noted that P.H. drives, manages her finances and routinely takes public transportation. *Id*. With respect to work-related abilities, Dr. Dixit found only mild impairments in P.H.'s ability to deal with the public and to remember and carry out detailed and complex tasks. *Id*. She further assessed that P.H. is able to understand, remember and carry out simple instructions without difficulty; has no significant difficulty interacting and relating to co-workers and supervisors; and no significant difficulty maintaining pace and persistence over two-hour increments. *Id*. Dr. Dixit observed that during the examination, P.H. had no significant difficulty maintaining attention and concentration, was able to "provide a cogent history" and tolerate the stress of the interview and testing process. *Id*.

P.H. argues that the ALJ erred in giving Dr. Dixit's opinion "the most weight to support his conclusion," stating that the ALJ found Dr. Dixit's opinion "is more consistent with the evidence as a whole and is a more recent picture of [P.H.]'s functioning." Dkt. No. 16 at 10. In P.H.'s view, the ALJ placed too much importance on Dr. Dixit's report of P.H.'s daily activities without showing how they translate to work skills, and Dr. Dixit's one-time evaluation when P.H.'s symptoms appeared mild. *Id*. at 11.

7

In evaluating Dr. Dixit's report, the ALJ noted that her opinion "is more consistent with the evidence as a whole" and presented "a more recent picture of [P.H.]'s functioning" when compared to an earlier psychological evaluation conducted in November 2017 by Dionne Childs, M.S. and supervised by Lesleigh Franklin, Ph.D.  AR 27.  The ALJ gave the opinion of Ms. Childs and Dr. Franklin only "partial weight" because "[d]espite moderate objective findings on examination," Ms. Childs assessed P.H. with marked and extreme limitations that the ALJ found were unsupported.  *Id*.  Other than asserting, in cursory fashion, that the ALJ should have given more weight to Ms. Child's/Dr. Franklin's opinion (Dkt. No. 16 at 13), P.H. does not specifically challenge the ALJ's assessment of that opinion.

Although the ALJ found Dr. Dixit's opinion more persuasive by comparison, he also gave Dr. Dixit's opinion only "partial weight," in part because "Dr. Dixit concluded that [P.H.] has all *mild* and *no* impairments stemming from her mood disorder."  AR 29.  The ALJ also stated that Dr. Dixit's sole diagnosis of a mood disorder could not serve as the basis for disability based on the longitudinal evidence and that Dr. Dixit based her conclusion regarding "remission from Polysubstance Abuse on [P.H.]'s report only."  AR 28-29.  The ALJ's RFC evaluation ultimately includes mental work restrictions that exceed those assessed by Dr. Dixit, including only occasional workplace changes, occasional interaction with the public, frequent interaction with coworkers and supervisors that does not involve teamwork, no fast-paced production requirements, and being off-task less than 10% of the workday.  AR 25.

P.H. nonetheless maintains that Dr. Dixit's opinion and the ALJ's partial crediting of that opinion is not supported by substantial evidence, pointing out that in an August 3, 2017 Adult Function Report, P.H. stated that she is not able to focus her attention to complete a task, being around people sometimes makes her anxious, and she prefers to be alone and is irritable or impatient with people.  AR 319, 323.  P.H. also notes that at the administrative hearing, she explained that her respiratory therapist job ended in 2009 because she was addicted to pain medications and had become depressed and unmotivated, and further testified to being uncomfortable around other people, including at the grocery store.  AR 117, 127.  P.H. argues that her statements and testimony are consistent with the findings of Ms. Seeman and Ms. Childs/Dr.

Franklin and argues elsewhere in her summary judgment motion that those opinions should be given greater weight in view of her history of traumatic experiences, including domestic abuse, heroin use and an attempted suicide in April 2015, which she says resulted in her homelessness, job loss and other stressors. Dkt. No. 16 at 13.

Although Ms. Seeman and Ms. Childs/Dr. Franklin assessed P.H. with more restrictive abilities than are reflected in the ALJ's RFC findings, the ALJ's evaluation of Dr. Dixit's opinion is supported by substantial evidence in the record as a whole. While the record does evidence P.H.'s hospitalization in April 2015 for suicidal ideation, that hospitalization occurred over a year prior to her alleged onset of disability and at a time when she was still using heroin. *See* AR 152, 387, 389. The ALJ acknowledged that P.H.'s treatment notes show ongoing complaints of major depressive disorder and PTSD, as well as chronic issues with depression, but noted that "there is no evidence of any more than generally moderate symptoms resulting [in] mental status abnormalities." AR 26. Indeed, the record indicates that P.H. began a treatment program of abstinence from illicit drug use, Suboxone medication and group therapy in November 2016. *See, e.g.,* AR 494, 505, 521-522, 529. The ALJ stated that a January 19, 2017 progress report shows that P.H. reported "good control of symptoms with treatment." AR 26. In that report, group therapist Monika Poxon, Psy.D. noted that P.H. "is stable at present. She is dealing effectively with issues related to: Abstinence from drugs/alcohol. She is attending outside support meetings. [P.H.]'s **Depression** appears to be stable. She is compliant with medication and treatment plan." AR 460. The report also notes that even with ongoing housing and financial stressors, P.H. reported "feeling less depressed and more hopeful about the future." *Id*. Dr. Poxon's observations are consistent with other progress notes dating between November 2016 and January 2017, as well as a November 5, 2016 report by the physician prescribing P.H.'s Suboxone medication in which he noted that P.H.'s "mood is fairly stable given the nature of her stressors," and that although she "had episodes of [major depressive disorder] in the past," P.H. "currently is handling life better and not clinically depressed." *See* AR 459, 484, 494, 505, 509, 521-22, 529.

The ALJ also found that P.H. "remains fully oriented and cognitively intact" with "[t]reatment records show[ing] [P.H.] has no problems effectively communicating information

9

during treatment and group therapy sessions." AR 27. The cited treatment records indicate that P.H. sometimes sat quietly and listened, but often was actively engaged and helpful to other participants in group therapy sessions. *See* AR 454, 456, 459, 462, 471, 477. The Commissioner points out that the ALJ's findings are consistent with other medical records from March, April, May and August 2017 showing that P.H. continued with Suboxone medication without any side effects and no withdrawal symptoms; P.H.'s statement in March 2017 that she was going to school to be a respiratory therapist; and her decision in July 2017 to decline medication for depression. AR 749, 763, 775, 787, 818, 874.

As noted above, in November 2017, Ms. Childs/Dr. Franklin assessed P.H. with greater deficits in mental functioning, including marked limitations in her ability to understand, remember, carry out detailed instructions and extreme limitations in the ability to maintain attention and concentration for two-hour segments and to complete normal workday and workweek without interruptions from psychologically based symptoms. AR 1265. P.H. argues that these findings are consistent with those of Ms. Seeman in November 2017 and March 2018, but P.H. does not challenge the ALJ's decision to give Ms. Child's/Dr. Franklin's opinion only partial weight on the ground that their findings of marked and extreme limitations are not supported by the record. AR 27. Viewing the record as a whole, the ALJ's decision to give Dr. Dixit's opinion only partial weight is supported by substantial evidence, and the Court finds no error here.

### 4.  Dr. Farah Rana, M.D.

Dr. Rana conducted an internal medicine evaluation on April 9, 2018. AR 1238-1247. With respect to P.H.'s complaints of low back pain, Dr. Rana noted that P.H. "had an MRI done a couple of years ago and it showed a pinched nerve." AR 1238. Upon examination, Dr. Rana noted "[m]ild lower back tenderness," but found that P.H.'s range of motion in the lower back to be within normal limits, with negative results on a straight leg-raising test. AR 1239. Dr. Rana further noted that all joints were nontender with full range of motion and that P.H. had a stable gait, as well as normal strength and sensation. AR 1240. Dr. Rana listed her diagnostic impressions as "history of diabetes," "[h]istory of hypertension," "[c]hronic lower back pain, most

probably secondary to mild degenerative disc/degenerative joint disease," and a "[r]eported history of depression." AR 1240. She opined that P.H. is capable of performing activities consistent with light work, including the ability to stand and walk six hours with breaks, sit for six hours with breaks, frequently carry 10 pounds, occasionally carry 20 pounds, and push or pull up to 20 pounds, with frequent posturing, no manipulative limitations and no need for an assistive device. *Id.*

The ALJ gave Dr. Rana's opinion "partial weight," stating that "a light residual functional capacity is not supported by the diagnoses offered, as they are 'history of' and 'probable' diagnoses, without objective evidence to support them. There are no functional limitations that flow from the probably and historic diagnosis." AR 27-28. Focusing on her claim of lower back pain, P.H. contends that the ALJ failed to provide clear and convincing reasons for partially discounting Dr. Rana's assessment that P.H. is limited to light work. Here, P.H. notes that in finding at step two of the sequential analysis that her low back pain is not a medically determinable impairment, the ALJ stated that "[P.H.] and her representative, failed to submit medical evidence to document her physical impairments . . .. Therefore, the undersigned finds that the record is silent on this issue; so there is no condition present that would explain [P.H.]'s complaints of low back pain." AR 23. Elsewhere in his decision, the ALJ explained that P.H.'s request for an on-the-record favorable decision was denied because "[t]here is no imaging to support a back problem. The allegation of chronic pain is a symptom and as such, a symptom cannot be a medically determinable physical impairment under SSR 96-4." AR 29. P.H. concedes that "an MRI, per se, is not exhibited in the medical evidence of record," but maintains that the ALJ's assertions are inconsistent with records from Kaiser and the West Oakland Health Center "which diagnose [P.H.] with lumbar spinal stenosis" and show that she "was indeed diagnosed with a back disorder." Dkt. No. 23 at 6. P.H. contends that "Dr. Rana's findings are not merely based on a history or probable diagnoses" (Dkt. No. 16 at 12) and that this evidence, coupled with Dr. Rana's familiarity with Social Security disability standards, required the ALJ to give Dr. Rana's opinion more weight.

For the most part, P.H. resorts to citing large swaths of the administrative record at AR

11

449-574 and AR 703-1237, pointing to only one page in Kaiser records (AR 449) that lists stenosis in the lumbosacral spine as of March 14, 2008 on a "Problems List."  Having reviewed the record, the Court observes that subsequent Kaiser records also note the March 14, 2008 diagnosis as part of P.H.'s medical history and active medical problems.  *See, e.g.,* AR 467, 469, 481, 517, 520, 522, 527, 532, 534, 540, 543, 547, 549, 551, 560, 568, 570.  As for the cited West Oakland Health Center records (AR 703-1237), P.H. points to no particular pages supporting her arguments, except for certain records (AR 741) regarding a July 2017 pelvic ultrasound showing a subserosal myoma (fibroid).  The record indicates that in March 2017, P.H. reported mild pelvic pain.  AR 757, 1079.  In June 2017, she reported moderate pelvic pain that she said was constant and getting worse.  AR 804, 807.  As noted, an ultrasound in July 2017 revealed a fibroid.  AR 741.

P.H. argues that the record therefore is not "silent" as to possible conditions that might explain her complaints of low back pain.  Additionally, positing that pelvic pain can also contribute to lower backache, P.H. argues that the ALJ failed to consider records concerning her fibroid in partially discrediting Dr. Rana's opinion.  The Commissioner says that there is only one treatment record dated May 31, 2017 indicating that P.H. complained of back pain, but that the treatment note contains no diagnosis of a back disorder or any back or musculoskeletal abnormalities, and no follow-up treatment for back pain.  AR 961, 966.  As for the July 2017 ultrasound, the Commissioner argues that there are no records that P.H. sought further treatment for her pelvic pain, and that at the September 2018 administrative hearing, she testified that while she still had "little pains there," she was not experiencing as much pelvic pain as before.  AR 122-123.

On this record, the Court finds that while the ALJ's skepticism of Dr. Rana's seemingly equivocal diagnostic impressions may not be entirely unfounded, it is not apparent that the ALJ considered all the evidence in the record in discounting her opinion.  There are, as P.H. points out, records indicating a diagnosis of lumbar spinal stenosis and a fibroid.  What is not clear is whether the ALJ took those records into account, and if so, how they may or may not have affected his evaluation of Dr. Rana's opinion.  Accordingly, the Court concludes that the ALJ did not provide

sufficient reasons for his decision to give Dr. Rana's opinion only "partial weight."

### B. Nature of Remand

The remaining issue is whether to remand this matter for further administrative proceedings or for the immediate payment of benefits under the credit-as-true doctrine. "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). Under the credit-as-true rule, the Court may order an immediate award of benefits only if three conditions are met. First, the Court asks "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). Next, the Court "determine[s] 'whether there are outstanding issues that must be resolved before a determination of disability can be made . . . . and whether further administrative proceedings would be useful.'" *Id*. (quoting *Treichler*, 775 F.3d at 1101). "When these first two conditions are satisfied, [the Court] then credit[s] the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability." *Id*. (citing *Treichler*, 775 F.3d at 1101). Even when all three conditions are satisfied and the evidence in question is credited as true, it is within the district court's discretion whether to make a direct award of benefits or to remand for further proceedings when the record as a whole creates serious doubt as to disability. *Id*. at 1045. As explained by the Ninth Circuit, "[a]n automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Id*. at 1044.

The Commissioner concedes that the ALJ erred in failing to provide his evaluation of Ms. Seeman's opinion or to account for her opinion in his RFC assessment. And as discussed above, the Court finds that the ALJ did not provide sufficient reasons for discounting Dr. Rana's opinion. P.H. maintains that if Dr. Rana's opinion properly is credited, then Rule 202.06 of the Medical Vocational Guidelines would direct a finding of "disabled" for someone of P.H.'s age, education and work experience. As discussed above, however, it is not clear whether the ALJ took evidence regarding P.H.'s back and pelvic issues into consideration and whether or to what extent those

records may affect his evaluation of Dr. Rana's opinion. Accordingly, further administrative proceedings are required for the ALJ to provide his evaluation of Ms. Seeman's opinion and Dr. Rana's opinion, make any necessary adjustments in his assessment of P.H.'s RFC, and make any additional determinations regarding P.H.'s ability to work.

## IV.   CONCLUSION

Based on the foregoing, P.H.'s motion for summary judgment is granted in part and denied in part, the Commissioner's cross-motion for summary judgment is granted in part and denied in part, and this matter is remanded for further proceedings consistent with this order. The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: March 15, 2021

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge